# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

WALLACE E. MECHLER
and CHRIS MECHLER,

    *Plaintiffs,*

v.

Case No. 12-1183-EFM

UNITED STATES OF AMERICA,

    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiffs Wallace and Chris Mechler filed suit against the Government for damages caused by the leeching of hazardous chemicals from a former Air Force base onto Plaintiffs' property. The Government filed a Motion to Dismiss (Doc. 7) for lack of subject matter jurisdiction, arguing that Plaintiffs' suit is barred by the two-year statute of limitations found in the Federal Tort Claims Act and/or Kansas's ten-year statute of repose. The Court finds that a reasonable plaintiff would not have discovered the contamination on Plaintiffs' property more than two years before Plaintiffs filed suit, and that the Comprehensive Environmental Response, Liability, and Compensation Act preempts state statutes of repose. The Court therefore denies the Government's motion to dismiss for lack of subject matter jurisdiction.

## I. Factual and Procedural Background

Plaintiffs Wallace E. Mechler ("Wally") and Chris Mechler, husband and wife, own title to a residence and 52 acres of real estate in Berrytown, Kansas. The Government, through the United States Department of the Air Force, operated the Forbes Air Force Base across the road from Plaintiffs' property until 1973. While the base was operational, the east side of Forbes Field consisted of two landfills that accepted waste generated at the base. The North Landfill was adjacent to property owned by Plaintiffs' and Wallace Mechler, Sr. ("Mechler Sr.").

In 1994, the U.S. Army Corps of Engineers began an environmental investigation of the former base. The investigation included a series of groundwater samplings of monitoring wells installed near the landfills. Water samples taken in October 1999 and January 2000 from a monitoring well located between the northern landfill and Mechler Sr.'s property detected vinyl chloride concentrations that exceeded regulatory limits for safe drinking water. In September 2000, the Kansas Department of Health and Environment and the Corps collected more samples from other wells, including the wells that provide water to Plaintiffs' home and Mechler Sr.'s home. That sampling showed that the water on Plaintiffs' land was within the regulatory limits, but the water at Mechler Sr.'s home exceeded the limit for vinyl chloride.

After receiving the results, the KDHE notified the Corps and Mechler Sr. about the vinyl chloride contamination. On September 26, 2000, the Corps met with Mechler Sr. and Plaintiff Wally Mechler. The Corps discussed the results and informed Wally of its belief that the contaminants had leeched from the landfill to the groundwater and into Mechler Sr.'s well. Wally informed the Corps that he would take an active role in monitoring the Corps' activity at his father's property to be sure the pollution did not migrate to Plaintiffs' property.

To ensure that Plaintiffs and Mechler Sr. had clean drinking water, the Corps installed whole-house granular activated carbon ("GAC") units in both homes. After the GAC units were installed, the Corps began testing Plaintiffs' and Mechler Sr.'s drinking water. The water collected from Plaintiffs' property comes from a collection cistern after running through a high-pressure hydrant. The Corps tested both pretreated water and GAC-treated water from Plaintiffs' and Mechler Sr.'s property. The tests showed that Plaintiffs' water was potable and uncontaminated, but that Mechler Sr.'s untreated well water contained vinyl chloride at a level in excess of the regulatory limits. On one occasion, Plaintiff Wally expressed to the Corps a belief that the contamination had ruined the value of Mechler Sr.'s property, and that the Corps should reimburse that loss. But Mechler Sr., who has since passed away, was not interested in pursuing protracted litigation with the government due to his age.

In August 2005, the parties looked into whether Plaintiffs and Mechler Sr. could be connected to water lines from the City of Topeka. The Corps offered to cover the expense of the connection, but not the cost of the city water. Additionally, the City of Topeka required Plaintiffs and Mechler Sr. to annex their property to the city, thereby subjecting them to city taxes and ordinances. Plaintiffs and Mechler Sr. therefore declined the Corps offer to connect them to the city water lines.

In the years following the discovery of contamination on Mechler Sr.'s property, the Corps installed seventeen additional groundwater monitoring wells on and around the landfill, Plaintiffs' property, and Mechler Sr.'s property. Plaintiffs received copies of the results of the testing, and were told that they would be notified if contamination ever reached their property. The results Plaintiffs received identified the wells with codes and provided only vague

descriptions of their location. Plaintiffs believed that wells located on Mechler Sr.'s property contained the label "MSR" for "Mechler Sr.," while Plaintiffs' cistern was labeled "PVW-MJR."

On April 3, 2009, the Corps sent Plaintiffs a letter with the results of testing performed on samples collected in October 2008 and March 2009. The letter began by identifying the wells' codes. Only two of the five listed wells did not specify whether they were located on Plaintiffs' property or Mechler Sr.'s: (1) MSR-03, which was identified as an upgrade from Plaintiffs' PVW-MJR cistern, and (2) OW-20, which was identified as the "[n]ewly installed monitoring well east of barn in the field."[1] Plaintiffs believed that wells 19 and 20 were located on Mechler Sr.'s front yard—a belief affirmed when the Corps renamed OW-20 as OW-MSR-05. In fact, according to a diagram that was not previously provided to Plaintiffs, well OW-MSR-05 is on Plaintiffs' property.

The April 2009 results showed that samples from well OW-20 (now OW-MSR-05) contained trichloroethene and vinyl chloride at levels exceeding regulatory limits. Plaintiffs believed the contaminated well was on Mechler Sr.'s property, and the results contained no explanations to the contrary. Plaintiff Wally spoke with the Corps twice by telephone on May 28, 2009, and was told that the water at well OW-MSR-05 was contaminated. Still assuming that the OW-MSR-05 well was located on his father's property, Plaintiff Wally believed the contamination had ruined the value of his parents' property.

In July 2009, the Corps again tested water samples from OW-MSR-05, again finding vinyl choride and trichloroethene above regulatory levels. The Corps sent these results to Plaintiffs on September 1, 2009. The Corps then installed more wells on Plaintiffs' property to

---

[1] Corps letter dated Apr. 3, 2009 (Ex. P), Doc. 7-21, at 2.

understand and monitor the contamination. Later tests of one of these wells, OW-MSR-09, and further testing of OW-MSR-05 confirmed the earlier contamination found on Plaintiffs' property. The results of these tests were sent to Plaintiffs in a letter dated June 20, 2010. Plaintiffs contend that this was the first time they were told that new wells installed on their property had been sampled. From these results, Plaintiffs discerned that the contamination had spread to their property. The parties agree that the Corps has never detected contamination above regulatory limits in the cistern that supplies Plaintiffs with drinking water.

Plaintiffs filed an administrative claim with the Department of the Air Force on September 20, 2011. The Air Force failed to dispose of the claim within six months after it was filed, permitting Plaintiffs to file suit in federal court under the Federal Tort Claims Act. The Government now moves to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs' suit is barred by the FTCA's two-year statute of limitations and/or Kansas's ten-year statute of repose.

## II.     Legal Standards

A.     **Nature of the Government's Motion**

As a threshold issue, the Court must characterize the nature of the Government's motion. Both parties rely on exhibits outside the pleadings, and they dispute whether the Government submitted a motion to dismiss under Rule 12(b)(1) or a motion for summary judgment under Rule 56. Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) facial attacks, which question the sufficiency of the allegations in the complaint; or (2) factual attacks, which challenge the content of the allegations regarding subject matter

jurisdiction.² As the Government notes, its argument that the Kansas statute of repose has extinguished Plaintiffs' claims is a facial attack for which the Court need not look outside the pleadings.

On the other hand, the Government's argument that Plaintiffs' claims are barred under the FTCA's two-year statute of limitations is a factual attack. In a factual attack under Rule 12(b)(1), the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."³ The Court may review this extraneous evidence without converting a 12(b)(1) motion to a motion for summary judgment. If, however, resolution of the jurisdictional question is intertwined with the merits of Plaintiffs' FTCA claims, then the Court is required to convert the Government's motion to one for summary judgment.⁴

Plaintiffs argue that the jurisdictional and substantive issues are intertwined because both fall under the FTCA.⁵ But Plaintiffs' substantive claim alleges a private nuisance under Kansas state law. Deciding whether Plaintiffs filed their claim within the statute of limitations set out in the FTCA does not require the Court to resolve any of the elements of a nuisance claim.⁶ Using the same logic, the Tenth Circuit has found that "the FTCA statute of limitations set forth in 28 U.S.C. § 2401(b) does *not* create a jurisdictional question intertwined with the merits of the

---

² *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

³ *Id.* at 1003.

⁴ *Id.*

⁵ *See id.* ("The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.").

⁶ *See Dinger v. United States*, 2013 WL 1001444, at *3 (D. Kan. Mar. 13, 2013).

case."[7] Therefore, the Court will address the Government's arguments as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

## B. Subject Matter Jurisdiction and the FTCA's Waiver of Sovereign Immunity

The Government argues that this Court lacks subject matter jurisdiction over Plaintiffs' claims because the federal government has not waived its sovereign immunity. Federal courts are courts of limited jurisdiction, and must have a statutory or constitutional basis to exercise jurisdiction over the subject matter of a suit.[8] Absent an unequivocal waiver, sovereign immunity prohibits private lawsuits against the federal government and its agencies.[9]

The Federal Tort Claims Act is a limited waiver of the federal government's sovereign immunity.[10] A claimant may bring suit under the FTCA for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant."[11] In other words, a court has subject matter jurisdiction over a tort claim brought against the United States only if the plaintiff can show that his or her claim falls within the statutory requirements of the FTCA.[12]

---

[7] *Trobaugh v. United States*, 35 Fed. App'x 812, 814–15 (10th Cir. 2002).

[8] *See* U.S. Const. art. III; *Sheldon v. Sill*, 49 U.S. 441, 448–49 (1850).

[9] *See Dolan v. United States Postal Serv.*, 546 U.S. 481, 484 (2006); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992).

[10] *See* 28 U.S.C. § 1346(b)(1).

[11] *Id.*

[12] *See In re Agent Orange Product Liability Litig.*, 818 F.2d 210, 214 (2d Cir. 1987) (stating that he burden is on the plaintiff to both plead and prove compliance with the statutory requirements of the FTCA), *quoted in Johnson v. Potter*, 2006 WL 1302120, at *3 (D. Kan. Apr. 19, 2006).

One requirement under the FTCA is that a suit be timely filed.[13] Under 28 U.S.C. § 2401(b), "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." Generally, a claim accrues on the date the injury occurred.[14] In exceptional cases where a reasonably vigilant plaintiff could not become immediately aware of the injury and its cause, the discovery rule tolls the two-year limitations period set out in § 2401(b).[15] The discovery rule says that "an FTCA claim accrues at the time when a reasonably diligent plaintiff would have known of the injury and its cause."[16]

### III. Analysis

**A. Plaintiffs' claims are not barred by the FTCA's two-year statute of limitations.**

Plaintiffs filed their administrative claim with the Department of the Air Force on September 20, 2011. To determine whether Plaintiffs filed suit after the expiration of the two-year statute of limitations found in 28 U.S.C. § 2401(b), the Court must decide whether, prior to September 20, 2009, the Mechlers knew or had reason to know that the chemicals from Forbes Field travelled to and contaminated their land. Plaintiffs argue that they did not learn that the contamination had seeped onto their property until they received a letter dated June 20, 2010, from the Army Corps of Engineers that said that newly installed wells showed contamination on Plaintiffs' property.

---

[13] *See Franklin Sav. Corp. v. United States*, 358 F.3d 1279, 1287 (10th Cir. 2004) ("Timeliness of suit is one of the conditions of the government's waiver of sovereign immunity under the FTCA, and the district court lacks subject matter jurisdiction to proceed under the FTCA if a plaintiff fails to satisfy the FTCA's timing requirements set forth in § 2401(b).").

[14] *See Cannon v. United States*, 338 F.3d 1183, 1190 (10th Cir. 2003).

[15] *Plaza Speedway Inc. v. United States*, 311 F.3d 1262, 1268 (10th Cir. 2002).

[16] *Cannon*, 338 F.3d at 1190.

The Government argues that Plaintiffs had sufficient knowledge of the contamination on their property to trigger the statute of limitations at three points prior to September 20, 2009. First, the Government points to the May 28, 2009, phone call between Plaintiff Wally and Corps employee Saqib Khan, arguing that Khan told Plaintiffs that the contamination was now on Plaintiffs' property. Although Plaintiffs may agree that Khan told them that well OW-20 showed contamination, Plaintiffs deny that Khan specified that the contamination was on Plaintiffs' property. The Government submitted a copy of Khan's notes of the phone call, but they do not resolve the parties' dispute about the substance of the call. Although the notes appear to read, "Mechler asked if OW under his property is contaminated the answer was Yes," it is unclear whether Plaintiff Wally actually asked about the "OW under his property" or if the note-taker, in summarizing the conversation, simply used that phrase to identify OW-MSR-05.[17] Furthermore, reviewing the map depicting the locations of the monitoring wells, it appears that OW-MSR-05, formerly OW-20, is either on or close to the border between Plaintiffs' property and Mechler Sr.'s.[18] Given the factual dispute about the information conveyed during the phone call between Plaintiff Wally and Kahn, the Court cannot find that Plaintiffs knew on May 28, 2009, that their groundwater was contaminated.[19]

---

[17] Notes of May 2009 phone calls (Ex. Q), Doc. 7-22, at 4.

[18] Aerial Maps (Exs. N & O), Docs. 19, 20.

[19] At oral argument, the Government asserted that Tenth Circuit law permits the Court to make factual findings on disputed facts during a factual challenge to subject-matter jurisdiction under Rule 12(b)(1). In *Holt v. United States*, the Tenth Circuit did state that a Court may hold "a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." 46 F.3d at 1003. But no such evidentiary hearing occurred before this Court. Other than the exhibits provided with the Government's motion, neither party elicited testimony from the parties to the phone call—Plaintiff Wally and Khan. Absent an evidentiary hearing, this Court is in no position to make factual findings regarding the credibility of those individuals with respect to the phone call.

Second, the Government argues that a reasonably diligent plaintiff would have known that Plaintiffs' property was contaminated in August 2009 when Plaintiffs signed an addendum to a lease agreement that specifically stated that well OW-20 was to be renamed well OW-MSR-05 and was located on Plaintiffs' property. The Government argues that Plaintiffs should have noted the information in the addendum and recalled the conversation with Khan four months prior in which Khan said that OW-20 showed contamination. A reasonably diligent plaintiff, the Government argues, would have put these pieces of information together and realized Plaintiffs' property was contaminated. The Court disagrees; it is unreasonable to expect that Plaintiffs, who were responsible for monitoring the status of their own property and Mechler Sr.'s, would recall during the signing of a lease agreement the code of a well mentioned in a phone conversation four months prior.

Finally, the Government argues that Plaintiffs should have known that their groundwater was contaminated when they received the testing results from the Corps on September 1, 2009, which showed that the well labeled OW-MSR-05 contained excessive amounts of trichloroethene and vinyl chloride. But the letter from the Corps does not explicitly state that excessive levels of trichloroethene or vinyl chloride were detected *on Plaintiffs' property.* The letters from the Corps simply use the alphanumerical codes to identify the wells. The brief description following the code for well OW-20/OW-MSR-05 reads: "Newly Installed monitoring well east of barn in the field."[20] Given that the barn is located on Mechler Sr.'s property and the code "MSR" in other contexts stands for "Mechler Sr.," Plaintiffs' failure to identify contamination on their property from the September 1, 2009, results was not unreasonable. The

---

[20] Corps letter dated Apr. 3, 2009 (Ex. P), Doc. 7-21, at 2 (using the OW-20 code); Corps letter dated Sept. 1, 2009 (Ex. R), Doc. 7-23, at 2 (using the OW-MSR-05 code).

fact that Plaintiffs signed the lease addendum in August that placed well OW-MSR-05 on Plaintiffs' property is not sufficient to put Plaintiffs on notice of contamination on their property.

The Government concedes that despite the constant monitoring and contact between Plaintiffs and the Corps, Plaintiffs never received a single notice that simultaneously informed them that (1) the OW-20/OW-MSR-05 well was located on Plaintiffs' property, and (2) excessive amounts of trichloroethene and vinyl chloride were found in well OW-20/OW-MSR-05. Instead, the Government asks the Court to find that a reasonably diligent plaintiff would have pieced together these disparate pieces of information from notices sent months apart and independently inferred that Plaintiffs' groundwater was contaminated. The Court believes the Government affords the reasonable person too much sleuthing prowess and too little faith in government assurances. Instead, the Court agrees with Plaintiffs that they did not have knowledge that the contamination had leeched onto their property until they received the June 2010 results from the Corps. Therefore, Plaintiffs' claims fall within the FTCA's statute of limitations.

**B.     Plaintiffs' claims have not been extinguished under Kansas's statute of repose.**

Having concluded that the FTCA's two-year statute of limitations does not bar Plaintiffs' claims, the Court must decide whether Kansas's statute for repose has extinguished Plaintiffs' claim. First, the Court will consider whether Kan. Stat. Ann. § 60-513(b) encompasses Plaintiffs' claims. Second, the Court will analyze split-circuit case law addressing the question of whether CERCLA preempts state statutes of repose.

### 1. Plaintiffs' claims are subject to the ten-year statute of repose in Kan. Stat. Ann. § 60-513(b).

The Government argues that the ten-year statute of repose found in Kan. Stat. Ann. § 60-513(b) prohibits Plaintiffs from bringing this claim. Section 60-513(b) states that "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action." That statute of repose specifically applies to those causes of action enumerated in Kan. Stat. Ann. § 60-513(a):

> (1) An action for trespass upon real property.
> (2) An action for taking, detaining or injuring personal property, including actions for the specific recovery thereof.
> (3) An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is discovered.
> (4) An action for injury to the rights of another, not arising on contract, and not herein enumerated.
> (5) An action for wrongful death.
> (6) An action to recover for an ionizing radiation injury as provided in K.S.A. 60-513a, 60-513b and 60-513c, and amendments thereto.
> (7) An action arising out of the rendering of or failure to render professional services by a health care provider, not arising on contract.

The Government argues that Plaintiffs' nuisance claim falls within section 60-513(a)(1), a trespass action, or subsection (a)(4), which appears to be a catch-all encompassing all torts not otherwise enumerated in subsection (a). Therefore, the Government contends, the ten-year statute of repose in Kan. Stat. Ann. § 60-513(b) extinguished Plaintiffs' claim in 1983—ten years after the Air Force ceased its activity on the Forbes Field.

Plaintiffs make two unsuccessful arguments as to why Kan. Stat. Ann. § 60-513(b) does not apply here. First, they argue that the statute of repose in section 60-513(b) does not apply because nuisance is not one of the causes of action enumerated in section 60-513(a). But section 60-513(a)(4) includes any "action for injury to the rights of another, not arising on contract, and

not herein enumerated." The plain language of this subsection clearly shows that it encompasses all tort claims not otherwise specified in section 60-513(a).[21]

Second, Plaintiffs contend that Kan. Stat. Ann. § 60-512, which does not contain a statute of repose, applies in place of section 60-513(b). Section 60-512 sets out the statute of limitations for causes of action created by statute. Plaintiffs contend that their claim is one under Kan. Stat. Ann. § 65-6203, which provides a cause of action for toxic torts. But the Government correctly notes that Plaintiffs' claim cannot be based on section 65-6203, because that statute creates a strict liability cause of action and the federal government's waiver of sovereign immunity under the FTCA does not include strict liability. Therefore, Plaintiffs' claim must fall within one of the categories of tort claims, or the catchall provision, enumerated in Kan. Stat. Ann. § 60-513(a), thereby subjecting Plaintiffs' claims to the ten-year statute of repose found in section 60-513(b).

### 2. *The statute of repose has not yet extinguished Plaintiffs' claims because CERCLA preempts state statutes of repose.*

Because Plaintiffs' claims are subject to Kan. Stat. Ann. § 60-513(b), the Court must now decide whether the statute applies in this case. The parties made several arguments regarding the tolling of section 60-513(b) in relation to Plaintiffs' discovery of the contamination. The Court, however, finds most persuasive Plaintiffs' argument that the Comprehensive Environmental Response, Liability, and Compensation Act (CERCLA)[22] preempts state statutes of repose.

Congress enacted CERCLA in 1980 to promote "efficient and equitable responses to the fallout from hazardous waste."[23] After its eleventh-hour enactment, Congress commissioned a

---

[21] *See Isnard v. City of Coffeyville*, 917 P.2d 882 (Kan. 1996); *City of Attica v. Mull Drilling Co., Inc.*, 676 P.2d 769, 774 (Kan. Ct. App. 1984).

[22] 42 U.S.C. §§ 9601–9675.

[23] *Waldburger v. CTS Corp.*, 2013 WL 3455775, at *1 (4th Cir. July 10, 2013).

study to examine the adequacy of common law and state statutory remedies for harms stemming from toxic material in the environment.[24] The study group found that injuries from toxic torts often take years to manifest, and noted that many states' statutes of limitations would run before the plaintiff is aware of the injury.[25] Based on these findings, the group recommended that all states adopt the discovery rule for the accrual of actions. The group specifically stated that their recommendation was "intended also to cover *the repeal of statutes of repose* which, in a number of states have the same effect as some statutes of limitation in barring [a] plaintiff's claim before he knows that he has one."[26]

In 1986, Congress decided to implement the study group's recommendation by enacting CERCLA § 9658. Section 9658 provides that "statute[s] of limitations established under State law shall apply in all actions brought under State law for personal injury,"[27] unless the commencement date for the state statute of limitations is earlier than "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned."[28] In other words, § 9658 announces a discovery rule statute of limitations that preempts any state statute of limitations that would accrue against a toxic tort plaintiff before the plaintiff is or should be aware of his or her injury.

---

[24] *Id.*; *see also* Congressional Report on Injuries & Damages from Hazardous Wastes (Ex. AA), Doc. 12-5.

[25] *Waldburger*, 2013 WL 3455775, at *2.

[26] *Id.* (emphasis added); *see also* Congressional Report on Injuries & Damages from Hazardous Wastes (Ex. AA), Doc. 12-5, at 7 (emphasis added).

[27] 42 U.S.C. § 9658(a)(2).

[28] *Id.* § 9658(b)(4)(A).

Courts are in agreement that CERCLA § 9658 preempts state statutes of limitations in the circumstances described above. The circuits, however, are split on the issue of whether § 9658 preempts state statutes of repose. In 2005, the Fifth Circuit held that the plain language of § 9658—which uses the phrase "statute of limitations" five times—clearly showed that Congress intended to preempt only statutes of limitations.[29] The Ninth and Fourth Circuits have rejected the Fifth Circuit's holding,[30] finding that the language of the statute is ambiguous because, at the time Congress enacted § 9658, courts across the country used the terms "statute of limitation" and "statute of repose" interchangeably.[31] The Ninth and Fourth Circuits instead turned to CERCLA's legislative history and remedial nature, and held that Congress intended § 9658 to preempt state statutes of repose with a limitations period that included no expiration of the cause of action.[32] Referring to the study group's conference report, the Ninth Circuit explained:

> [T]he reports show that Congress's primary concern in enacting [§ 9658] was to adopt the discovery rule in situations where a plaintiff may lose a cause of action before becoming aware of it—precisely the type of circumstance involved in this case. This predicament can be caused by either statutes of limitation or statutes of repose, and is probably most likely to occur where statutes of repose operate.[33]

The Fourth Circuit further distinguished the Fifth Circuit's contrary opinion in the *Burlington* case by noting that the *Burlington* plaintiffs—unlike the plaintiffs in *Waldburger* and *McDonald*—had knowledge of their injury and its cause before the statute of repose extinguished

---

[29] *Burlington Northern & Santa Fe Ry. Co. v. Poole Chemical Co.*, 419 F.3d 355 (5th Cir. 2005).

[30] *Waldburger*, 2013 WL 3455775; *McDonald v. Sun Oil Co.*, 548 F.3d 774 (9th Cir. 2008).

[31] See *McDonald*, 548 F.3d at 781 n.3 (listing numerous cases decided in various jurisdictions around 1986 that confused statutes of limitations and statutes of repose).

[32] *Waldburger*, 2013 WL 3455775, at *7–8; *McDonald*, 548 F.3d at 779–83.

[33] *McDonald*, 548 F.3d at 783.

their cause of action. As the Fifth Circuit itself explained, the *Burlington* case did "not involve the delayed discovery for which § 9658 was intended to address."[34]

In the present case, applying Kan. Stat. Ann. § 60-513(b) to Plaintiffs' claims would mean Plaintiffs' cause of action was extinguished in 1983—seventeen years before any of the Mechlers learned of the contamination of their groundwater. To hold that the Kansas statute of repose prohibits Plaintiffs' claim would defeat Congress's intent to provide an avenue of relief for those suffering from delayed injuries caused by hazardous wastes in the environment. The Court therefore adopts the reasoning of the Fourth and Ninth Circuits and finds that Congress intended CERCLA § 9658 to preempt both state statutes of limitation and repose for causes of action arising from delayed injuries from hazardous waste. For that reason, Kan. Stat. Ann. § 60-513(b) has not extinguished Plaintiffs' cause of action against the Government, and this Court maintains subject matter jurisdiction over Plaintiffs' claims.

**IT IS ACCORDINGLY ORDERED** this 2nd day of August, 2013, that Defendant's Motion to Dismiss (Doc. 7) is hereby **DENIED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[34] *Burlington Northern & Santa Fe Ry. Co.*, 419 F.3d at 364–65.